## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Criminal No. 21-cr-166 (TFH)** |
| **ROBERT MAURICE REEDER,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Robert Maurice Reeder to two months' imprisonment and restitution in the amount of $500.

### I.    INTRODUCTION

On January 6, 2021, Robert Maurice Reeder ("Defendant"), after *twice* breaching the Capitol, remaining—by his own account—in the Capitol for *more than a half hour*, and being in or around the Capitol *for over two hours*, recorded a video (Exhibit A) bragging about his riotous and unlawful conduct:

> "I just left the Capitol. One of the last people out. I was in there for over a half hour. I got gassed several times inside, many times outside the Capitol. Got shot with peppers balls. Its fucking nuts. We had to battle the police inside. It was crazy. Absolutely insane."

Despite these statements and self-recorded video, the Defendant, at his change of plea, urged his defense counsel to point out to the Court that, although he admitted to violating the law by Parading in the Capitol, he did not know he was prohibited from breaching the Capitol. The Defendant would ask the Court to believe that despite *being tear gassed* and *shot with pepper*

*balls*, he was simply unaware that entry into the Capitol was prohibited at that time.  As pointed out by the Government during Defendant's change of plea hearing, any one of these facts would have been a hint that entering the Capitol at that time was unlawful.  Simply put, Defendant's position is divorced from reality and is evidence of a larger issue presented in this sentencing.

Although the Defendant has pleaded guilty to Parading in the Capitol he appears to be proud of his participation in the attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than a million dollars' worth of property damage. Indeed, the Defendant was so proud of his participation in the riot that he recorded it for the world to see – to see him chant "Fight for Trump" as he scaled the steps of the Capitol and headed toward the mob entering the building; to see him breach the Capitol twice; to stand by and videotape an officer being assaulted; and to hear him brag that he "battle[d] the police."  For the Defendant, these unlawful acts were a source of pride and accomplishment.  For the nation, it was a permanent source of shame and sorrow.

While the Government recognizes that Reeder did not personally engage in violence or property destruction, his participation in the mob contributed to mayhem and destruction, his limited acceptance of responsibility, and his continued lack of remorse or contrition for the full scope of his conduct on January 6th, all weigh in favor of a custodial sentence.  Therefore, the Government recommends that the Court sentence Reeder to two months in custody, which is just below the mid-point of the maximum sentence allowable by statute, and restitution in the amount of $500.

II.      **FACTUAL AND PROCEDURAL BACKGROUND**

*The January 6. 2021 Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 19, at 1-3. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day.  With that backdrop we turn to the defendant's conduct and behavior on January 6.

*Robert Reeder's Role in the January 6, 2021 Attack on the Capitol*

On January 6th,  the Defendant drove from Maryland and attended the "Stop the Steal" rally on the Ellipse.  When the speeches were over, the Defendant walked with a crowd toward the Capitol building.  After arriving at the Capitol and ascending the steps of the building, the Defendant joined other rioters and  took photos and videos of other members of the mob, including those in or around the scaffolding on the western front of the building and those breaching the doors of the Capitol.  The Defendant recorded a video in which he stated: "We've been getting tear gassed...thousands of people" and then appeared to chant: "Fight for Trump!"

As the Defendant approached an open door of the Capitol, a high-pitched alarm can be heard in the background.  Capitol Police Officers are seen standing along the wall in the entrance. At the threshold of the building, the Defendant approached Capitol Police Officers and asked: "Is there anywhere where I can get water?"  An officer responded: "We don't have any water in here, sir. There's some outside."  The Defendant then walked past the Officers, opened an interior door, and proceeded into the Capitol building.  From inside the Capitol, the Defendant took numerous photos and videos throughout the building.  While in the Capitol rotunda, with individual outfitted in combat gear, the Defendant turns the camera on himself and says, with some excitement, "tear

gas inside the Capitol."  Soon after, the Defendant was close enough to the Senate chamber to take video of individuals appearing to attempt to breach the doors.

The Defendant then briefly left the Capitol building, only to turn around and breach the Capitol again.  At that time, the Defendant recorded a video of himself chanting "USA!" with the crowd as he approached the open doors to the Capitol building.  The Defendant then recorded another video in which he appears to be around and within the Capitol rotunda.  It is clear that the Capitol Police are struggling to retake the area and officers are being assaulted by the mob.  In one instance, the Defendant recorded an assault on two Capitol Police Officers.  One officer is seen being pushed, grabbed by his gas mask, and punched in the head.  Another individual is heard yelling "Fuck the Police."  As the Defendant reaches the exit of the Capitol he records the mob chanting "Hang Mike Pence."

After leaving the Capitol building, the Defendant recorded a video from the Capitol grounds in which he stated: "I'm leaving now... I got tear gassed at least four times inside the Capitol...I saw the lady they say got shot, I walked right past her in a pool of blood. And it's just...completely crazy in there."  Needing to do another take to further brag about his participation in the riot, the Defendant recorded an additional video in which he stated: "Just left the Capitol, I was one of the last people out. I was in there for over half an hour. I got gassed several times inside the Capitol, many times outside the Capitol. Got shot with pepper balls. It was fucking nuts. We had to do...ah... battle with the Police inside. It was crazy...absolutely insane."

*The Charges and Plea Agreement*

On March 1, 2021, a four-count Information was filed charging the Defendant with Entering and Remaining in a Restricted Building, in violation of Title 18, United States Code, Section 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building, in violation of

Title 18, United States Code, Section 1752(a)(2); Violent Entry and Disorderly Conduct in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G).

On June 23, 2021, the Defendant signed a plea agreement that he would enter a guilty plea to Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G).  In his plea agreement, the Defendant agreed to pay $500 in restitution to the Department of Treasury.

### III.   <u>STATUTORY PENALTIES</u>

The defendant now faces a sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.   <u>A SENTENCE OF TWO MONTHS' IMPRISONMENT IS CONSISTENT WITH THE FACTORS SET FORTH IN  18 U.S.C. § 3553(a).</u>

In this case, sentencing is guided by 18 U.S.C. § 3553(a). Some of the factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6).  We therefore turn to these factors.

### A.  Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 is a criminal offense unparalleled in American history.  It represented a grave threat to our democratic norms; indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants.  By its very nature, the attack defies comparison to other events.  So, too, does the conviction this defendant now faces.  Picketing, demonstrating, or parading at the Capitol as part of the riot on January 6 is not like picketing at the Capitol some other day, without other rioters present.

While each defendant should be sentenced based on their individual conduct, as we now discuss, this Court should note that each individual person who entered the Capitol on January 6 did so under the most extreme of circumstances.  As a person entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob.  Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement and likely would have smelled chemical irritants in the air.  Make no mistake, no rioter was a mere tourist that day.

Additionally, while looking at the defendant's individual conduct, we must assess such conduct on a spectrum.  This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant engaged in any violence or incited violence; (3) whether the defendant engaged in any acts of destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored, law enforcement; and (9) whether the defendant otherwise exhibited

evidence of remorse or contrition.  While these factors are not exhaustive nor dispositive, they help to place each individual defendant on a spectrum as to their fair and just punishment.

On January 6, 2021, the Defendant purposefully joined a large group of rioters intent on interfering with the nation's electoral process or, as the Defendant chanted, "Fight[ing] for Trump."  In doing so, the Defendant and others not only imperiled core democratic functions but also collectively caused enormous emotional, physical, and financial injuries along the way.

Although the Defendant was only one of thousands of rioters on that day, his decisions contributed to the tragic events of that day.  The Defendant had many opportunities to extricate himself and abide by the law, but he never chose to do so.  During the entire afternoon of January 6th, the Defendant consistently chose to be a part of the riotous mob.  Indeed, not only did the Defendant choose to violate the law, he was intent that the world should see his contribution to the mayhem.

The Defendant choose to leave the rally and walk the 1.7 miles from the Ellipse toward the U.S. Capitol Building, filming the first steps in the breach of the Capitol.  The Defendant had almost two miles to change his mind and decide to turn back.  But instead he chose to press forward.

The Defendant chose to be a lawless rioter rather than peaceful protestor.

The Defendant chose to enter the grounds and walk toward the building.  At this point, around 2:31 p.m., the Defendant's path was littered with downed barriers, tear gas, smoke, broken glass and property destruction, and physical violence.  The Defendant saw and recorded how outnumbered the law enforcement officers were.  Indeed, from the landing on the western front of the Capitol, the Defendant records himself on video saying "We have been getting tear gassed. Thousands of people."  The Defendant chose to press forward and breach the Capitol.

The Defendant chose to be a part of the desecration of the Capitol rotunda.  The Defendant stood in the center of the rotunda, where Ruther Bader Ginsburg, John Lewis, Ronald Reagan, Dwight Eisenhower, John F. Kennedy, and Abraham Lincoln, among others, lied in state.   He stood there and filmed rioters in combat gear and others waving their partisan flags and cheering. On the spot where Senator Robert Dole struggled to rise from his wheelchair to give a final salute to President George H.W. Bush's flag draped coffin, the Defendant spun around to make sure he had a 360-degree video of himself and his fellow rioters clad in hats and flags that said "Make America Great Again."  What the Defendant chose to record and celebrate at that place, at that time, was antithetical to the events that most Americans associate with the Capitol rotunda.  Indeed, his very presence in the Capitol rotunda that day was a desecration of hallowed ground.

Unlike many of the other rioters, the Defendant chose to leave the Capitol and then illegally re-enter the building from the eastern front of the building.

Again, unlike many of the other defendants charged with similar crimes, the Defendant chose to record an assault on Capitol Hill Police officers.   As described above, one of the officers is grabbed, pushed, and punched in the head.  A person in the crowd is heard yelling "Fuck the cops."

The Defendant chose to stand among the crowd and record as they yelled "Hang Mike Pence."

The Defendant chose—after two unlawful breaches of the Capitol, seeing the destruction of property, and the violence against law enforcement—to take the time to record two additional videos bragging about his exploits from the day.

The Government recognizes that the Defendant did not personally destroy property[1] or

---

[1]       The Government has identified an instance in which the Defendant yells "Do not destroy

Case 1:21-cr-00166-TFH   Document 26   Filed 08/06/21   Page 9 of 14

engage in any violence against law enforcement officers.  But he was surrounded by others who were doing both, and he entered the Capitol as others had paved the way with destruction and violence.  Time and time again, rather than turn around and retreat, the Defendant choose to continue to riot and record.  Indeed, even after exiting the Capitol, the Defendant chose to breach the Capitol a second time, and record an assault on that same officer.  Accordingly, the nature and circumstances of the offense support the recommended 2-month term of imprisonment.

### B.  Defendant's History and Characteristics

The Defendant is a 55-year-old man with no prior criminal history.  If the Sentencing Guidelines did apply to his offense of conviction, he likely would have zero points. USSG § 4A1.2(c)(2).  Accordingly, he would be in Criminal History Category I. USSG §§ 4A1.1, 5A. With respect to his current employment, the Defendant is on administrative leave from FedEx because of the pending criminal matter.

The government also notes that from the outset, through his attorney, the Defendant expressed a desire to plead guilty and promptly resolve his case.  When recommending an appropriate sentence, the government gives significant weight to the defendant's early resolution of this case.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds, and all that it involved, was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly

---

anything." However, the Defendant's presence in the Capitol contributed to law enforcement's inability to prevent such destruction.

administration of the democratic process."[2] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases arising out of the riot on January 6, 2021, including in misdemeanor cases.

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).  The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the transfer of power. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

---

[2] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021) (hereinafter "FBI Director Wray's Statement"), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

The gravity of these offenses demand deterrence. This was not a protest. *See id.* at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights."). And it is important to convey to future rioters and would-be mob participants—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

A sentence of two months' imprisonment is necessary to promote respect for the law and adequate specific and general deterrence. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[3]  When the Defendant entered the Capitol grounds and the Capitol itself —*twice*— it was abundantly clear to him that lawmakers, and the law enforcement officers who tried to protect them, were under siege.  Law enforcement officers were overwhelmed, outnumbered, and in some cases, in serious danger.  Indeed, the Defendant has admitted that he saw the protestors and police struggling and pushing each other, people being pepper sprayed, flash bang grenades, and the barricades fall.  The rule of law was not only disrespected, it was under attack that day.  A lesser sentence would suggest to the public, in general, and other rioters, specifically, that criminal acts in support of a political cause are a crime which will go without serious punishment.  In this way, a lesser sentence could encourage further and more serious—if not deadly—abuses.  *See Gall v. U.S.*, 552 U.S. 38, 54 (2007) (it is a "legitimate concern that a lenient sentence for a serious offense threatens to promote disrespect for

---

[3]     Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021) (hereinafter "FBI Director Wray's Statement"), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

the law").

With respect to specific deterrence, a clear message must be sent to this Defendant that he is being held responsible for all of his illegal conduct during the riots.  Tellingly, the Defendant continues to minimize his conduct.  The Defendant described himself to law enforcement as an "accidental tourist with a phone trying to document everything."  In fact, the Defendant was a rioter violating the law; not a journalist; not a tourist.  Further, the Defendant has notably blamed law enforcement and other government officials for his presence in the Capitol.  The Defendant stated that he believes that "its almost like they wanted us to come in there and they closed the doors and then they have their sound bite for the news, you know…. That, was kind of a plan to allow people in and then drop them and then, you know, demonize the Trump people."  To be clear, and to state the obvious, the Defendant was not a victim; he was a perpetrator.  Anything other than a custodial sentence will fail to give the Defendant a dose of reality and deter him from future illegal conduct.

### E.      Unwarranted Sentencing Disparities

Finally, as to 18 U.S.C. § 3553(a)(6) – the need to avoid unwarranted sentencing disparities – the crimes that Reeder and others like him committed on January 6 are unprecedented.  These crimes defy statutorily appropriate comparisons to conduct in other cases that occurred before January 6, 2021.  As of the date of this filing six defendants have been sentenced for crimes related to the January 6th riot, and the government's recommendation in this case falls within the range of those prior sentences.

V.      **CONCLUSION**

For the reasons set forth above, the United States respectfully requests that the Court impose a term of two months' imprisonment  and restitution in the amount of $500.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar Number 415793


By:     /s/ Joshua S. Rothstein
Joshua S. Rothstein
Assistant United States Attorney
N.Y. Bar Number 4453759
555 4th Street, N.W., Room 5828
Washington, D.C. 20530
Office: 202-252-7164
Joshua.Rothstein@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

I certify that, by virtue of the Court's ECF system, a copy of the foregoing pleading was sent to defense counsel on August 6, 2021.

*/s/ Joshua S. Rothstein*
Joshua S. Rothstein
Assistant United States Attorney