UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Criminal No. 21-cr-166 (TFH) |
| ROBERT MAURICE REEDER, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S REPLY TO DEFENDANT'S MEMORANDUM IN AID OF SENTENCING (D.E. 29)**

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this reply to Defendant Robert Reeder's sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein and in the Government's Memorandum in Aid of Sentencing (D.E. 25), the Government requests that this Court sentence the Defendant to a term of imprisonment and restitution in the amount of $500.

As the late Senator Daniel Patrick Moynihan once said, "You are entitled to your opinion. But you are not entitled to your own facts." The Defendant's sentencing memorandum attempts to paint a picture of the Defendant as a lost tourist, in awe of the Capitol, defending it from destruction and documenting the events of the day. To believe the Defendant's version of events one needs to suspend reality, ignore facts, and omit evidence. The Government's Reply addresses some of the representations and characterizations set forth in the Defendant's memorandum.

*First*, the Defendant appears to justify his conduct, arguing that he simply did not know that he wasn't allowed in the Capitol, and he blames the police for not "verbally or otherwise" attempting to keep him out of the building. *See* D.E. 29 at 3. The Defendant's argument is the equivalent of blaming homeowners for not having a better security system or doing more to stop

a mob of burglars. The Defendant omits the fact, that by his own recounting, he and his fellow rioters were tear-gassed by law enforcement in an attempt to prevent them from breaching the Capitol, as they were vastly outnumbered by rioters. *See* Exhibit A at 8:00. The Defendant's account also omits the fact that there were four officers at the door endeavoring to defend against hundreds of rioters outside and hundreds more who had already entered the building through broken windows and doors. *See id.* at 8:20. Nor does the Defendant acknowledge that there was an extremely loud alarm going off as he approached and entered the building. *See id.* at 8:43. Nevertheless, the Defendant continues to maintain that he simply had no idea he wasn't allowed to enter the Capitol. It is unclear what additional sign the Defendant needed to indicate he was not welcome other than the barricades, tear gas, pepper balls, alarms, and law enforcement officers.

*Second,* the Defendant claims that he was only inside the Capitol because he was searching for water because of the tear gas. *See* D.E. 29 at 3. The Defendant omits the fact that the officer he asked for water specifically told him that there was none inside and directed him to get water outside. *See* Exhibit A at 8:54.

*Third*, the Defendant claims that he was so struck by the "awe and the beauty of the Rotunda" that he "began taking pictures and videos." D.E. 29 at 4. The Defendant omits that he had been filming the *entire riot*—because he was proud to be a part of it. The Defendant's own video footage shows rope lines knocked over on the floor of the rotunda, and individuals waiving Trump 2020 flags, and yelling, among other things, "whose house, our house." *See id.* at 9:32. The video also shows rioters in battle dress attire yelling for people to clear the hall as tear gas is seen in the background. *See id.* at 10:32. The Defendant then turns the camera on himself and announces, with some excitement, "tear gas inside the Capitol." *See id.* at 10:32. Rioters surrounding him can then be heard chanting "stop the steal." *See id.* at 10:40.

*Fourth*, the Defendant claims that he left the Capitol after "he noticed too many people had begun to yell and not act with respect." D.E. 29 at 12.  It is unclear why the Defendant was not similarly troubled by the conduct of the rioters he filmed before breaching the Capitol.  This included, among other things: (1) individuals climbing a camera platform in front of the inauguration stage and raising a Trump 2020 flag with another flag being displayed showing two assault rifles with phrase "Liberty or Death" and "2nd Amendment 1789";  (2) a large crowd of people, which he was among, climbing the west front of the Capitol, passed the fallen police barricades, as a loud siren is blaring; (3) the unruly mob continuing to press forward despite being tear gassed; and (4) thousands of rioters overrunning and breaching the Capitol.  *See* Exhibit A at 7:09.  To state the obvious, these individuals were not speaking in soft voices and acting with respect.

*Fifth,* the Defendant nearly glosses over the fact that after exiting the Capitol building and being directed by a police officer to a path away from the Capitol grounds, the Defendant decided to breach the Capitol for a second time.  *See* Exhibit A at 13:52.

*Sixth*, the Defendant omits that when he reentered the Capitol, he forced his way back into the Capitol Rotunda, which law enforcement officers were trying to clear.  *See id.* at 15:20.

*Seventh*, the Defendant failed to mention that, during his second breach of the Capitol, he was standing next to rioters as they assaulted a police officer and, rather than assist the officer, the Defendant made sure he continued to film. *See id.* at 16:45.

*Eighth,* the Defendant claims that it wasn't until he got home that he realized the "full extent of the riotous behavior that was occurring at the Capitol." D.E. 29 at 4.  The Defendant literally filmed two hours of rioters breaching the Capitol, battling with police, and destroying government property.  Indeed, near the end of his day of riotous conduct, the Defendant—*twice*—

recorded himself bragging about his exploits and the extent of violence and destruction. He referenced being tear gassed outside the Capitol and at least four times inside the Capitol, bragged to have had to "battle with the police" and described the death of a rioter. *See Exhibit A* at 19:37. The Defendant stated that it was "absolutely fucking insane." *See id.* The idea that the Defendant did not realize what was happening until he got home is as absurd as it is unbelievable.

*Ninth*, the Defendant claims he was one of the first individuals to provide video and pictures to law enforcement, as if he was just a good citizen coming forward to help the Government. That is simply not true. The Defendant came forward only after he was informed by his neighbor that the FBI had been outside his residence. At that point in time, federal authorities had already arrested numerous individuals, throughout the country, for their criminal conduct in the riot. The Government does not dispute that once the Defendant was identified and pursued by law enforcement, he made no efforts to avoid being charged. However, it is inaccurate to call the Defendant's submission of a video, that he hoped would allow him to avoid prosecution, "overwhelming" cooperation. While the Defendant did meet with the Government on two occasions, the information he provided did not rise to substantial cooperation. Rather, the Defendant provided the Government with a self-serving rewrite of history that sought to portray himself as a hapless tourist, absolve himself of any wrongdoing, place blame on others—including law enforcement—and then complain about the consequences of his actions. The Defendant did not provide any information that resulted in the prosecution of another person or provided any greater factual detail about his own conduct. In fact, during the interview, the Defendant claimed that there was a conspiracy to allow rioters into the Capitol and then close the doors in order to "demonize the Trump people." D.E. 29, Ex. 1 at 127. The Defendant further blamed law enforcement and stated "those guys didn't do their job…" *Id.* at 128. In other words, the

Defendant believes that law enforcement and other unidentified Government officials purposefully allowed the Capitol to be overrun for the sole purpose of making the rioters—who were assaulting law enforcement and breaking down barricades, windows and doors—look bad.  It should be further noted that the Defendant deleted his social media once it was apparent that individuals were being arrested for their conduct on January 6th.  The Defendant was not a Good Samaritan seeking to help the Government; he was a rioter attempting to avoid the consequences of his conduct and minimize the ramifications.  This is precisely why 18 U.S.C. § 3553(a)(2)(B), adequate deterrence, is so important: to deter the Defendant and others from engaging in such wholly wrongful behavior.

Finally, despite the Defendant's attempts to portrays himself as a victim who is being falsely associated with the same group of rioters he chose to join—for over for over two hours—there were plenty of actual victims on January 6th, including police officers, government workers, and members of Congress.  The Defendant was not an innocent and unlucky tourist, he was an active participant in criminal behavior against a sitting branch of government.  For these reasons and those set forth above, as well as in the Government's Memorandum in Aid of Sentencing, the United States respectfully requests that the Court impose a term of imprisonment and restitution in the amount of $500.

        Respectfully submitted,

        CHANNING D. PHILLIPS
        ACTING UNITED STATES ATTORNEY
        D.C. Bar Number 415793

By:    /s/ Joshua S. Rothstein
        Joshua S. Rothstein
        Assistant United States Attorney
        N.Y. Bar Number 4453759
        555 4th Street, N.W., Room 5828
        Washington, D.C. 20530
        Office: 202-252-7164
        Joshua.Rothstein@usdoj.gov

**CERTIFICATE OF SERVICE**

      I certify that, by virtue of the Court's ECF system, a copy of the foregoing pleading was sent to defense counsel on August 13, 2021.

                                            */s/ Joshua S. Rothstein*
                                            Joshua S. Rothstein
                                            Assistant United States Attorney